| | |
|---|---|
| BEST SECURITY TRAINING & ASSOCIATES, LLC *<br>4506 St. Barnabas Road<br>Temple Hills, MD 20748 * | IN THE<br><br>CIRCUIT COURT |
| Plaintiff, * | FOR |
| v, * | PRINCE GEORGE'S CO. |
| PARAGON SYSTEMS, INC. *<br>13655 Dulles Technology Drive, Suite 100<br>Herndon, Virginia 20171 * | MARYLAND<br><br>Civil No. CAU4-15480 |
| SERVE: National Registered Agents, Inc. *<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 * | |
| Defendant. * | |

## COMPLAINT

Plaintiff Best Security Training & Associates, LLC, through undersigned counsel, files this Complaint against the Defendant Paragon Security Systems, Inc., for Defamation *Per Se* and Tortious Interference with a Business Relationship. In support of its claims, Plaintiff states as follows:

### Preliminary Statement

1. This action arises primarily from a defamatory statement made about the business of Plaintiff Best Security Training & Associates, LLC ("Best Security" or "Plaintiff"), by an employee of Defendant Paragon Security Systems, Inc. ("Paragon"), and distributed to 86 recipients, many of whom were current and prospective clients of Plaintiff. This communication, along with subsequent instances of verbal communications containing similar defamatory comments, have damaged and continue to damage the reputation Best Security, and caused direct economic harm to Best Security.

## Jurisdiction and Venue

2. This court has jurisdiction over the Defendant pursuant to Maryland Code, Courts and Judicial Procedure, § 6-103(b) because the Defendant transacts business in and caused tortious injury in this state.

3. Venue is proper in Prince George's County pursuant to Maryland Code, Courts and Judicial Procedure, § 6-201, as the Defendant carries on regular business in Prince George's County and the cause of action arose in Prince George's County.

4. The Court has subject matter jurisdiction over this matter pursuant to Maryland Code, Courts and Judicial Procedure, §§ 1-501 and 4-401(1) as the amount in controversy exceeds $30,000.

## Parties

5. Plaintiff Best Security Training & Associates, LLC ("Best Security") is a limited liability company located at 4506 St. Barnabas Road, Temple Hills, Maryland 20748. At all times relevant hereto, Best Security was authorized to transact business in the State of Maryland.

6. Defendant Paragon Systems, Inc. ("Paragon") is an Alabama Corporation, with its principal office at 13655 Dulles Technology Drive, Suite 100, Herndon, Virginia 20171. Upon information and belief, Paragon is authorized to transact business in the State of Maryland, however, there is no record with the Maryland State Department of Assessments and Taxation for any Paragon Systems, Inc. incorporated in Alabama.

7. Mr. Charles Gaskins is President of Best Security, and a resident of Maryland.

8. Mr. Nicholas Hill was, at all times relevant to the operative facts, an employee of Paragon. Upon information and belief, Mr. Hill is no longer employed by Paragon.

9.  Mr. Richard Waddell was, at all times relevant to the operative facts, an employee of Paragon. Upon information and belief, Mr. Waddell is no longer employed by Paragon.

## Statement of Facts

10. Best Security provides weapons and security training services to prepare its clients for Federal Protective Services (FPS)[1] security guard positions for properties owned by the General Services Administration (GSA). Best Security also offers similar training for Maryland, Virginia and District of Columbia security officer licenses.[2] A copy of Mr. Gaskins' licenses and certifications are attached as Exhibit A.

11. Charles Gaskins, owner and founder of Best Security, has been a certified FPS officer for seventeen years, and an instructor for eight years. Mr. Gaskins founded Best Security in 2009.

12. Paragon offers similar training service to Best Security, also training its clients for FPS positions. In addition to training, Paragon also directly contracts with GSA to provide FPS-qualified personnel for security guard positions.

---

[1] The Department of Homeland Security's (DHS) Federal Protective Service (FPS) is the primary agency responsible for providing law enforcement and related security services for the approximately 9,600 federal facilities under the control and custody of the General Services Administration (GSA). The GSA issues contracts with various private companies to provide security guard services, and such contractors must assure their security guards comply with FPS training and certifications. See GAO Report 13-694, date September 2014, available at http://www.gao.gov/assets/660/657920.pdf (last visited June 17, 2014). The training itself is typically conducted by third party trainers, such as Best Security.

The Training requirements include: Background investigation/contractor employee fitness determination, Basic Training (a 64-hour training course based on the FPS Security Guard Information Manual), Initial Weapons training, FPS screener training, FPS orientation, Firearms qualifications, Baton certifications, Oleoresin Capsicum spray certification, State and local permits, CPR certification, AED certification, First-aid certification and refresher training. *GSA Report 13-694* at 8, Table 1.

[2] Maryland, Virginia and District of Columbia each has security officer licensing requirements.

13. While Best Security was starting up, Mr. Gaskins worked part-time as a trainer for CMS Training Academy & Protective Services, LLC, a Maryland company ("CMS"), and continued to work part-time as a certified Protective Service Officer for GSA.

14. While working at CMS, Mr. Gaskins trained students that he referred to Paragon to seek job opportunities. Paragon repeatedly accepted and hired students trained by Mr. Gaskins at CMS over a period of about eighteen months.

15. Mr. Gaskins stopped working with CMS on or around April 1, 2013, to focus on growing Best Security's business.

16. After Mr. Gaskins left CMS, Paragon continued to seek and accept trainees from Best Security to fulfill FPS security guard positions.

17. Until around June of 2013, Paragon and Best Security had a mutually beneficial business relationship, wherein Paragon would refer clients to train with Best Security, and upon completion of training, Best Security could provide Paragon with fully-trained security guards that could be fulfill GSA contracts.

18. Mr. Nicholas Hill was, at all times relevant to the operative facts, an employee of Paragon. Upon information and belief, Hill is no longer employed by Paragon.

19. As part of Hill's employment, Paragon required that he obtain FPS training, and referred Hill to train with Mr. Gaskins at Best Security.

20. Hill failed to complete required assignments or attend classes and participate in training. He expressed to Mr. Gaskins that he expected to receive the certification without undertaking the required work.

21. Mr. Gaskins refused Hill's request to become certified without completing the course requirements. After which, Hill appeared angry and resentful towards Mr. Gaskins.

22. Because of Best Security's relationship with Paragon, on Hill's request, Mr. Gaskins fully refunded Hill's tuition for the course. Best Security's Course Registration Notes for Mr. Hill is attached as Exhibit B.

23. In June of 2013, shortly after failing the course, Hill began telling Best Security's students that Paragon would no longer accept "exhibits"[3] from Best Security, claiming that Best Security lacked the property qualifications to train the students for FPS positions.

24. Specifically, Yasimina Jackson completed her training with Best Security and approached Paragon to apply for a security guard position. Ms. Jackson's training certifications are attached as Exhibit C.

25. Despite having completed the required training, Mr. Hill turned down Ms. Jackson on the stated reason that Mr. Gaskins was not properly licensed. Ms. Jackson summarized her interaction with Mr. Hill at Paragon in the note attached and incorporated herein as Exhibit D, stating:

> When I went into Paragon 6-24-13 Nick Hill asked "what school did you go to?" I said, "Best Security." Then he asked "how much did you pay?" So I told him. Nick Hill also stated that **"Mr. Gaskin was not accredited to teach that course,"** that course meaning GSA, and said that he would contact FPS to find out Mr. Gaskin creditials [sic].
>
> Nick Hill also said that "Mr. Gaskin was a teacher for CMS, **but that doesn't mean he can open his own business as if he's a liscense [sic] instructor."**
>
> I had already been offered a job by Paragon, filled out a new hire packet, and gave them all of my paperwork by the time Nick Hill came into the picture. I feel as though I was discriminated against do [sic] to the fact that no one else had this problem and these people took Mr. Gaskin's course just like I have and got the job."
>
> Ex. D (emphasis added).

---

[3] "Exhibits" is the terminology for the certifications needed to prove successful completion of required training.

5

26. On June 25, 2013, Mr. Gaskins wrote to Richard Waddell, a program manager at Paragon and Mr. Hill's supervisor, to inquire into Mr. Hill's comments and request that he stop making the false accusations about Best Security and Mr. Gaskins. The June 25, 2013, email chain between Charles Gaskins and Richard Waddell is attached as Exhibit E.

27. Waddell replied, stating that "Mr. Hill did not in any way discredit you or your company. I am the one that informed officers reporting to my office with your exhibits that I have to receive approval from my training division Director. I am simply doing what I have to do to ensure we are accepting accredited exhibits." Ex. E at 3.

28. Two days later, Mr. Waddell told Mr. Gaskins to "[p]lease refrain from sending personnel to Paragon for employment. We cannot accept your exhibits." Ex. E at 3.

29. The same day, Mr. Hill, a Paragon employee, sent an e-mail (attached as Exhibit F and incorporated by reference herein) stating that:

> Due to Paragon's "…training departments investigation into the accreditation of BEST SECURITY (Mr. Charles Gaskins) they have found **that this Security company has not been accredited and therefore we cannot use the exhibits…**"

Ex. F at 2 (emphasis added).

30. The accusation that Best Security or Mr. Gaskins was not "accredited," or that in any other the exhibits were not valid and acceptable by FPS, is absolutely false.

31. This June 27, 2013, e-mail was sent to eighty-six recipients, at least some of whom were current students of Best Security. And upon information and belief, the majority of which were prospective clients of Best Security or were professionals in the security training community who were aware of Best Security.

32. Shortly after Mr. Hill distributed the June 27 email, three of the six currently-enrolled students stopped attending Best Security and demanded refunds from Best Security.

The other three currently-enrolled students demanded a partial refund by way of Best Security offering another class (the Virginia handgun certification). Best Security provided the substituted classes for free to those students. In total, Best Security refunded $2140 to his then-enrolled students.

33. Defendant's employees Hill and Waddell continued to verbally make statements regarding Mr. Gaskins and Best Security, falsely alleging that Plaintiff lacks adequate qualifications or accreditation.

34. In fact, there are no GSA or FPS "accreditation" required to provide the training to future potential FPS security guards.[4]

35. Such defamatory statements were overheard by Paragon employees, Paragon students, and potential students of Best Security.

36. Defendant's false statements regarding Best Security discredited the ability of Best Security to perform its business or trade, thereby damaging its business reputation.

37. Defendant's defamatory statements damaged Best Security's business reputation, which has directly financially harmed Best Security and resulted in actual damages including refunding students tuition and loss of substantial number of potential and future students.

38. Best Security charged $450 per student to receive a three-week GSA training course, and $500 to receive a weekend FPS training course. Best Security charged $380 per student to receive the two-week Virginia training course.

39. During June of 2013, Best Security had six students registered for the GSA training course. Best Security's Student Registrations are attached as Exhibit G.

---

[4] There are state-level certifications required to offer various classes, for example, Virginia state handgun permits. Mr. Gaskins at all times relevant hereto maintained all required state-level certifications to teach all the courses offered by Best Security. See Ex. A.

7

40. The Defendant's statements directly resulted in Best Security's students seeking refunds and discontinuing their training with the Plaintiff. Best Security's Refund Receipts are attached as <u>Exhibit H</u>. Plaintiff refunded $2140 to students who demanded a refund or a substitute Virginia training course. Plaintiff incurred $2140 in costs for full reimbursements and replacement course value, as broken out below:

| Student | Original Course | Replacement Course | Loss/Refund Amount |
|---|---|---|---|
| R. Desir Jr. | GSA ($450) | Virginia ($380) | $380 |
| Y. Jackson | GSA ($450) | Virginia ($380) | $380 |
| K. Thomas | GSA ($450) | Virginia ($380) | $380 |
| S. Gray | GSA (weekend) ($500) | None | $500 |
| O. Boateng | GSA (weekend) ($500) | None | $500 |
| S. Lacy | GSA (weekend) ($500) | None | $450 |
| N. Hill | GSA | None | $450 |
| **TOTAL** | | | **$2140** |

See Exs. B and H.

41. In addition to Plaintiff's existing students, Best Security lost a contract with All Faith Consortium, which would have provided ten veterans a month to enroll in Best Security's FPS classes. At $450 per student, that would amount to $4,500 in revenue per month (or $54,000 per year). At $500 per student, that would amount to $5,000 in revenue per month (or $60,000 per year). Best Security had a verbal contract with All Faith Consortium prior to the Defendant's comments regarding Best Security and Mr. Gaskins' qualifications.

42. When Paragon began rejecting all of Best Security's trainees, and informed him that they would not hire his students in the future, Mr. Gaskins informed All Faith Consortium that Paragon would not be a potential employer for their veteran trainees. Because of this, All

Faith Consortium revoked the verbal contract and referred their members to another training school.

43. Due to the harm to Best Security's business reputation, since June of 2013, Best Security has enrolled students only in the state certification courses, and has drastically reduced the number of total clients.

44. In May of 2013, anticipating growth in enrollment and business, Best Security signed a one-year lease (May 1, 2013 through April 30, 2014), at an annual rental amount of $6,600, intended to operate as Best Security's training property. The Lease is attached as Exhibit I.

45. Best Security's income in June 2013 was $11,830. Following the harm to Plaintiff's business reputation, its income in July 2013 dropped to $3,475, and its income in August 2013 dropped to $1,897. See 2013 Income Statement attached as Exhibit J.

46. Best Security is also damaged by the loss of future income from clients requiring re-certification over time.

## COUNT I
### Defamation *Per Se*

47. Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

48. Defendant's June 27, 2013, email, sent by Nicholas Hill, and other verbal communications, constituted a defamatory communications.

49. Mr. Hill was an employee of Paragon, acting within the scope of his employment, when he wrote the June 27, 2013, email.

50. The Defendant was at fault in communicating the statement.

9

51. The Defendant made the statement with either reckless disregard for its truth or with actual knowledge of its falsity, constituting actual malice.

52. Alternatively, Defendant acted negligently in failing to ascertain that the statement was false.

53. The Defendant distributed the defamatory statement to eighty-six people who reasonably recognized the statement as being defamatory.

54. The statements regarding Best Security lacking accreditation are false. Best Security never lacked the any required accreditation or certification for their GSA/FPS training services.

55. The e-mail written by Mr. Hill constitutes a statement that is defamatory *per se* because it discredits the ability of Best Security to perform its business or trade, thereby damaging its business reputation.

56. Plaintiff suffered harm as a result of the defamatory communication.

57. As a direct and proximate result of Defendant's actions, Best Security was damaged in an amount of no less than $75,000.

### COUNT II
### Wrongful Interference with Business Relationship

58. Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

59. Defendant's defamatory statements, by email and subsequent verbal communications, were made intentionally.

60. Defendant's defamatory statement was calculated to cause damage to the Plaintiff in their lawful business, as it directly informed current and potential Best Security clients that Plaintiff's training program were not acceptable.

61. Defendant's defamatory statement was done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice).

62. Plaintiff suffered actual damage and loss due to Defendant's actions, in an amount no less than $75,000.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

(A) Awarding Best Security compensatory damage for harm incurred due to Defendant's defamatory statements and wrongful interference with Plaintiff's business relationships, in an amount to be proven at trial, but in any event no less than $75,000; and

(B) Award Best Security Punitive Damages for harm to its reputation caused by Defendant's defamatory statements;

(C) Awarding Plaintiffs costs, reasonable attorney fees, and pre- and post-judgment interest as permitted by law; and

(D) Granting any such other and further relief as the Court may deem just and proper.

## JURY DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: June 25, 2014

Jerry A. Miles, Esq.

11

Angeline R. Burke, Esq.
**DEALE SERVICES, LLC**
One Research Court, Suite 450
Rockville, Maryland, 20850
O| 240 403 2652 M| 240 328 0514
A| 240 342 3212  F| 301 519 8001
E| jmiles@dealeservices.com
E| aburke@dealeservices.com

*Counsel for Plaintiff*