IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEST SECURITY TRAINING &   :
ASSOCIATES, LLC
               :
 v.             : Civil Action No. DKC 14-2985
               :
PARAGON SYSTEMS, INC.
               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this defamation case are the following motions: (1) a motion for summary judgment filed by Plaintiff Best Security Training & Associates, LLC ("Best Security" or "Plaintiff") (ECF No. 32); (2) a cross-motion for summary judgment filed by Defendant Paragon Systems, Inc. ("Paragon" or "Defendant") (ECF No. 34); and (3) a motion to seal partially an exhibit filed by Defendant (ECF No. 36). The relevant issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for summary judgment will be denied. Defendant's cross-motion for summary judgment will be granted in part and denied in part, and its motion to file a redacted exhibit will be granted.

**I.   Background**

  **A.   Factual Background**

Unless otherwise noted, the following facts are undisputed. Best Security provides weapons and security training for

individuals seeking positions with the Federal Protective Service ("FPS") at federal properties and various other positions that require a Maryland, Virginia, or District of Columbia security officer license. (ECF No. 32-1, at 4). Charles Gaskins, Best Security's owner and sole member, previously worked for CMS Training Academy & Protective Services, LLC ("CMS"), another security training company. (*Id.* at 5; ECF No. 34-1, at 4). On April 1, 2013, Mr. Gaskins left CMS to focus on building Best Security. (ECF No. 34-8, at 3).

While at CMS, Mr. Gaskins provided training for individuals who were seeking employment as FPS security officers with Paragon. (ECF No. 32-1, at 5). Paragon contracts with FPS to provide security officers for federal properties. (ECF No. 34-1, at 2). While still employed by CMS, Mr. Gaskins approached Paragon about providing training for officers who would be working for Paragon pursuant to Paragon's new contract with FPS under which Paragon was to provide security for the United States Department of Homeland Security and the United States Coast Guard's new headquarters at St. Elizabeths in Washington, D.C. (ECF Nos. 34-1, at 5; 34-8, at 15). Best Security's first training class was scheduled for May 2013. (ECF Nos. 34-1, at 5; 34-8, at 19). Nicholas Hill, a Paragon employee at the time, was registered for the class but ultimately did not attend. The parties dispute why Mr. Hill did not attend the class: Plaintiff

2

contends that Mr. Hill refused to satisfy the class's requirements, and Defendant asserts that Mr. Hill did not attend the class either because he learned that Best Security was unable to provide the FPS training he sought or due to confusion over the schedule. (ECF Nos. 32-1, at 5-6; 34-1, at 5, 9).

According to Plaintiff, in June 2013, Yasimina Jackson completed a training class at Best Security and applied for a security guard position with Paragon. (ECF No. 32-1, at 6). Plaintiff avers that Paragon informed Ms. Jackson that Best Security "was not accredited to teach" an FPS security officer training course. (*Id.*). Mr. Gaskins sent an e-mail to Richard Waddell, a program manager at Paragon, asking why Ms. Jackson was told Best Security was not accredited. (ECF No. 34-13). Mr. Waddell informed Mr. Gaskins that there was an issue with Best Security's "exhibits," and requested that Best Security "refrain from sending personnel to Paragon for employment [because Paragon] cannot accept [Best Security's] exhibits." (*Id.*).[1] According to Mr. Gaskins, Paragon continued to accept Exhibits he signed when working at CMS but did not accept exhibits he signed on behalf of Best Security once he left CMS. (ECF No. 34-8, at 26). On June 27, 2013, Mr. Hill sent an e-mail to eighty-six unidentified individuals:

---

[1] "Exhibits" are forms documenting the completion of training pursuant to FPS contracts. (*See* ECF Nos. 34-1, at 2; 34-5, at 87; 34-16).

> Good morning,
>
> Unfortunately due to our training department[']s investigation into the accreditation of BEST SECURITY (Mr. Charles Gaskins)[,] they have found that this Security company has not been accredited and therefore we cannot use the exhibits. I apologize for this[;] I have just found out from our training department. If this pertains to you please reply to this email.
>
> Respectfully,
>
> Hill, Nicholas
> Paragon Systems

(ECF No. 32-4, at 2). According to Plaintiff, three of the six students enrolled in a training class withdrew and requested a refund after receiving Mr. Hill's e-mail. (ECF No. 32-1, at 7). Plaintiff also contends that it lost significant business in the months following the e-mail. (*See id.* at 9).

**B.   Procedural History**

On June 25, 2014, Plaintiff filed a complaint in the Circuit Court for Prince George's County (ECF No. 2), and Defendant timely removed the action to this court (ECF No. 1). The complaint asserts two counts: defamation based on Mr. Hill's e-mail and "other verbal communications" (Count I); and wrongful interference with a business relationship based on the alleged defamatory statements (Count II).

On February 24, 2015, the parties participated in an unsuccessful settlement conference with Magistrate Judge Charles

B. Day, and discovery closed on July 28.  On September 25, Plaintiff filed the pending motion for summary judgment. (ECF No. 32).  Defendant filed a combined cross-motion for summary judgment and opposition to Plaintiff's motion.  (ECF No. 34). Plaintiff filed a combined opposition to Defendant's cross-motion and a reply in support of its motion (ECF No. 37), and Defendant replied (ECF No. 38).  On November 18, the parties held another unsuccessful settlement conference before Magistrate Judge Day.  Also pending is a motion to seal partially an exhibit filed by Defendant.  (ECF No. 36).

## II.  Standard of Review

A court may enter summary judgment only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v.*

*Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (*quoting* former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby,* 477 U.S. at 249-50 (citations omitted).  At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.  *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure."  *Desmond v. PNGI Charles Town Gaming, LLC,* 630 F.3d 351, 354 (4th Cir. 2011).  The court must deny both motions if finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2720 (3d ed. 1998).

**III. Analysis**

   **A.    Defamation**

In Maryland, to succeed on a claim of defamation, a plaintiff must prove the following elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement [(*i.e.*, the defendant acted with negligence or actual malice)], and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007); *see also Trundle v. Homeside Lending, Inc.*, 162 F.Supp.2d 396, 400 (D.Md. 2001) (citing *Shapiro v. Massengill*, 105 Md.App. 743, 772 (1995)).  Defendant argues that it is entitled to summary judgment because Plaintiff has not shown that the alleged defamatory statements were false.  (ECF No. 34-1, at 13-15).

In Maryland, the plaintiff has the burden of proof to demonstrate that an allegedly defamatory statement is false. *Trundle*, 162 F.Supp.2d at 400 (citing *Batson v. Shiflett*, 325 Md. 684, 726 (1992)).  Judge Blake recently summarized a plaintiff's burden:

> A "false" statement is "one that is not substantially correct." *Piscatelli [v. Van Smith*, 424 Md. 294, 306 (2012)] (quotation omitted). "If the 'gist' or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'" *AIDS Counseling and*

7

>           *Testing Cntrs. v. Group W Television, Inc.*,
>           903 F.2d 1000, 1004 (4th Cir. 1990) (quoting
>           *Liberty Lobby, Inc. v. Rees*, 852 F.2d 595,
>           601 (D.C.Cir. 1988)).   Maryland extends
>           substantial constitutional protections to
>           private defamation defendants and "the
>           burden of proving falsity rests upon the
>           plaintiff."  *Jacron Sales Co., Inc. v.
>           Sindorf*, 276 Md. 580, 597 (1976).

*Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *2 (D.Md. Dec. 11, 2012).  "Put another way, a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Batson*, 325 Md. at 726 (citation and internal quotation marks omitted).

According to Plaintiff, Mr. Hill's statements that Best Security is not "accredited" are false because Best Security and Mr. Gaskins had the requisite certifications and accreditations to provide training, and there are no additional requirements to perform FPS training.  In his sworn deposition, Mr. Gaskins avers that Paragon accepted, and continued to accept, exhibits that he signed when working at CMS but refused to accept exhibits he signed while at Best Security.  (ECF No. 34-8, at 25-26).  According to Mr. Gaskins, nothing changed other than that he began signing exhibits on behalf of Best Security instead of CMS.  (*Id.* at 47-48).  Furthermore, Mr. Gaskins asserts that he spoke with two FPS employees who informed him that there were no additional requirements to become accredited

8

for FPS training. (ECF No. 34-8, at 8-10). Defendant counters that the statements are true because neither Best Security nor Mr. Gaskins were approved as trainers under Paragon's statement of work with FPS and "it is FPS policy not to accept Exhibits from third-party trainers with whom it does not have a contract." (ECF No. 34-1, at 13-15).

Neither party's contentions are supported fully by the record, which does not clearly establish what requirements, if any, exist for companies and individuals seeking to provide training for FPS. Defendant's argument that Best Security was not approved as a training company under Paragon's contract with FPS is unpersuasive. At best, such an argument indicates that Paragon *chose* not to allow Best Security to provide training under a statement of work for one particular contract, but it does not show that Best Security was not "accredited" to provide FPS training.

Similarly, Defendant's argument regarding FPS's acceptance of third-party trainers is unclear and in dispute. Both parties point to evidence supporting their assertions regarding Best Security's ability to provide FPS training. Defendant cites to an e-mail sent by an FPS employee in 2014, which states: "FPS doesn't do business with 3rd party vendors. . . . Without a contract number, there is no way to verify the legitimacy of the

contract." (ECF No. 34-12, at 1).[2] On the other hand, Mr. Gaskins asserts in his deposition that it has always been his practice, even when he was at CMS, to fill out the blanks for "name of instructor" and "name of company" on the exhibits but leave the signature line blank to be filled out by an employee of the contractor. (ECF No. 34-8, at 23; *see also* ECF No. 34-16 (example of an exhibit Mr. Gaskins completed for Ms. Jackson for completing a Best Security training class)). According to Mr. Gaskins, Paragon previously accepted such exhibits. (ECF No. 34-8, at 25-26). Even if FPS does not accept exhibits signed by companies without an FPS contract, it is unclear how this policy would prevent FPS from accepting an exhibit *signed by a Paragon employee under Paragon's contract with FPS* certifying training that was performed by Best Security. Again, Paragon may have decided not to utilize Best Security's training services for this particular contract, but this decision does not indicate that Best Security was "unaccredited" to perform FPS training, particularly in light of Mr. Gaskins's sworn assertions regarding Paragon's prior acceptance of exhibits he filled out while at CMS.

---

[2] It should be noted that the FPS official sent this e-mail approximately one year after the relevant time period and in response a question from Paragon regarding a different training company.

In sum, significant gaps in the record and briefing exist that preclude the award of summary judgment to either party. At minimum, there is a genuine dispute of material fact as to what, if any, process exists for a training company such as Best Security to become accredited to provide training under FPS contracts. Defendant has articulated that Paragon chose not to accept Best Security's exhibits under its contract with FPS, but this is not what Mr. Hill's e-mail stated. Rather, the e-mail focused on Best Security's qualifications, clearly asserting that Best Security "has not been accredited and therefore [Paragon] cannot use the exhibits." (ECF No. 32-4, at 2). Neither the parties nor the record sheds much light on what any such accreditation or approval process entails, and the parties dispute whether Best Security was able to provide the training at issue. Accordingly, neither party is entitled to summary judgment on Plaintiff's defamation claim.

**B.    Wrongful Interference with a Business Relationship**

When no contract exists between the parties, the tort of interference with a business relationship requires that a plaintiff show: "'(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss . . . and (4) actual damage and loss resulting.'" *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130

11

F.Supp.2d 700, 710 (D.Md. 2001) (quoting *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 70-71 (1984)). The tort "requires that the tortfeasor 'maliciously or wrongfully interfere with economic relationships.'" *Martello v. Blue Cross and Blue Shield of Md., Inc.*, 143 Md.App. 462, 476 (quoting *Natural Design*, 302 Md. at 69).

In its cross-motion, Defendant argues that Plaintiff has failed to show that Paragon acted with the requisite malice or wrongfulness or that Best Security suffered any actual damage or loss resulting from Mr. Hill's statements. (ECF No. 34-1, at 20-22). Beyond a recitation of the tort's elements, Plaintiff neither discusses nor puts forth evidence supporting this claim in any of its summary judgment papers, including its response to Defendant's motion. Beyond a few conclusory allegations in its complaint, Plaintiff has not shown how Defendant's actions satisfy the elements. Accordingly, Defendant's motion for summary judgment will be granted as to Count II.

    **C.   Defendant's Motion to Seal Partially an Exhibit**

Defendant seeks to redact portions of Exhibit 2 to its cross-motion for summary judgment, which is Paragon's Training Management Plan. (ECF No. 36-1). Defendant moves pursuant to a stipulated protective order regarding confidentiality of discovery material, which the court approved. (ECF Nos. 24; 25). Defendant's request implicates principles of common-law

access and a more rigorous First Amendment analysis that applies to judicial records. Before sealing any documents, the court must provide the non-moving party with notice of the request to seal and an opportunity to object. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). This notice requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 234. Finally, the court should consider less drastic alternatives to sealing, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, it should also provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.* at 235; *see Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

Although Defendant initially filed its entire cross-motion for summary judgment under seal, the proposed redactions to the Training Management Plan are limited and reasonable. Plaintiff has not opposed Defendant's request for redactions. Accordingly, Defendant's motion to seal partially an exhibit will be granted. Defendant's cross-motion for summary judgment and all exhibits will be unsealed except for Exhibit 2, ECF No. 34-4, which shall remain under seal. A redacted public version is available at ECF No. 36-1.

13

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied. Defendant's cross-motion for summary judgment will be granted in part and denied in part, and its motion to seal partially an exhibit will be granted. A separate order will follow.

                                              /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge